IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANNY ANAYA, | ) | CASE NO. 3:11CV779 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| KEITH SMITH, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

Petitioner, Danny Anaya ("Petitioner" or "Anaya"), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on April 21, 2011.[1] Doc. 1.  In his petition, Anaya challenges the constitutionality of his conviction and sentence in *State v. Anaya*, Case No. CR-2005-3316 (Lucas Cty. 2006).  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  For the following reasons, Anaya's petition for writ of habeas corpus should be DENIED.

## I.  Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2878 (2009). The Ohio Sixth District Court of Appeals summarized the facts underlying Anaya's conviction as follows:

> **{¶8}** The following facts, as set forth in *Anaya I* and agreed to by appellant, are pertinent to our disposition of appellant's assignments of error. We have also included additional pertinent facts as set forth in the record of this case.

---

[1] This is Anaya's second, though not successive, federal habeas petition. Anaya's first petition was assigned to Judge Polster and Magistrate Judge Limbert.  *See* Case No. 3:10-cv-00760.  On April 27, 2011, Judge Polster granted Anaya's motion to dismiss without prejudice.   Case No. 3:10-cv-00760, Doc. 12.

{¶9} Appellant and his wife, Rhonda, were married for 19 years and had four children; however, only three of those children were residing with their parents at the time of the murder. Rhonda filed a complaint for divorce in July 2005. After she filed for divorce, Rhonda started sleeping on the family room sofa. Appellant's three children, a 15-year-old girl, a 16-year-old girl and a 14-year-old boy, each had an upstairs bedroom of his or her own. All three of appellant's children, who were in the family home when their mother was killed, testified at appellant's trial.

{¶10} The youngest daughter related that on October 24, 2005, a Monday, she attended school, came home afterwards, and took a nap in her bedroom until 10:00 p.m. Upon awaking from her nap, the girl made herself a sandwich, ate it in her upstairs bedroom, and went to sleep around 11:00 p.m. Around 3:00 a.m. on October 25, 2005, the sounds of scratching and the front door opening and closing woke her. Then she heard a muffled scream from downstairs. Therefore, she got out of bed and went down to the family room, where the lights were on. There she saw Rhonda slouched half on and half off the couch; appellant was standing over her. The fifteen year-old asked appellant, who she saw had blood "spattered" on his face, what was going on and he told her that Rhonda had a nightmare and had punched him. As appellant was telling her that nothing was wrong and to go back upstairs to bed, the youngest daughter saw him put a knife in the back waistband of his jeans. She also saw that appellant had a pair of rubber gloves in the back pocket of his jeans and had work gloves on his hands.

{¶11} The girl also heard Rhonda asking appellant what he was doing and why he was wearing gloves. She recognized the long, wooden-handled knife from the kitchen, saying, "It almost looked like a machete * * * we always used it to cut watermelon." The girl returned to her bedroom and tried to call police but could not get a signal on her cell phone. She then heard Rhonda screaming, went to the stairway landing, leaned over, looked into the kitchen, and saw appellant stab Rhonda with the same knife three times. She also saw Rhonda with her hands up, trying to fend off the attack. The 15 year old then ran back into her bedroom and was able to call 911 from her cell phone. A tape of the 911 call was submitted as evidence and played to the jury.

{¶12} Appellant's oldest daughter came home from school that day, ate a pizza with Rhonda, and went to her room between 9:30 and 10:00 p.m. She did not go to sleep and went downstairs to the kitchen around 2:25 a.m. for a drink. She saw Rhonda sleeping on the family room couch and did not turn on any lights. The girl went back to her room, went to sleep, and, according to her bedroom clock, woke up to the sound of screaming at 3:06 a.m. The older daughter heard appellant say, "Get back to bed" and thought he must be speaking to her brother, who, she assumed, was making the noise. Then she heard both Rhonda and appellant fighting, heard more screaming, and heard her younger sister go halfway down the stairs, scream, and run back into her bedroom.

2

{¶13} Soon thereafter, the noises stopped. The oldest girl then heard her brother ask appellant if every-thing was all right and appellant telling the boy to go back to bed. She got dressed and went to her younger sister's room. The younger girl quickly told her older sister what she had seen, and returned to speaking to the 911 dispatcher.

{¶14} At trial, appellant's son testified that when he went to his upstairs bedroom around 11:00 p.m., his mother was in the family room, and appellant was in his upstairs bedroom. The son later awoke to sounds of scratching and "people running around." Thinking it was the family dog, he stayed in bed. A few minutes later he heard screaming, so he went downstairs. The boy stopped on the stairway landing as appellant was exiting the kitchen. He asked appellant what happened, and appellant told him to go back to bed. The son went back to his bedroom, but thinking that something was wrong, he went to his younger sister's bedroom. There, his younger sister told him that she saw appellant stabbing Rhonda and that she called the police. The older sister was already in the room with his younger sister. At about the same time, the boy heard knocking on the front door. It was the police who had just arrived in response to the 911 call.

{¶15} Sylvania Police Officers Crowell and Haase, the initial responders, testified to the condition of the scene as they found it. When appellant opened the door after they knocked, he was sweating heavily, had small cuts on his cheek, and had blood on his face. One officer told appellant they needed to talk, and appellant immediately responded, "She attacked me." The officers entered the front room, and Haase walked approximately ten feet straight back into the kitchen looking for appellant's wife while Crowell stood with appellant. When Haase saw Rhonda lying on the floor, he immediately told Crowell to handcuff appellant. When Crowell did so, he noticed blood on appellant's hands. He led appellant outside the home and placed him in the officers' patrol vehicle.

{¶16} Meanwhile, Haase called emergency medical services and, without touching her, checked Rhonda for signs of life. In his opinion, she was already dead. Rhonda had a large kitchen knife in her left hand. Nevertheless, in her testimony, the youngest daughter testified that Rhonda was right-handed. Other officers were arriving at that point, and, after securing the scene, Crowell and Haase went upstairs to sit with the three children.

{¶17} Officer Froelich, the EMS respondent, testified that he found no vital signs when he first arrived and checked Rhonda. He and his partner attempted to resuscitate her, but their efforts were unsuccessful. The coroner testified that among the multiple stab wounds that Rhonda suffered, at least two knife wounds--one in her neck and the other, in her heart--were definitely fatal. Many of the knife wounds were "defensive" wounds, "inflicted on the person who attempts to defend him or herself."

{¶18} During his testimony on direct examination, appellant admitted that he killed Rhonda, but denied any plan or intention to kill her. Explaining, he said that he was awakened by voices outside the house around 3:00 a.m. Tuesday morning. He claimed that he fell asleep in multiple layers of clothing because he had bad knees and intended to use carpet cleaner he just purchased to clean his bedroom floor. According to appellant, he put on work gloves to deal with some garbage cans before he left for work, and went outside to investigate the voices. He found no one, and when he came inside, Rhonda was sitting up on the sofa. The two began a conversation about holiday vacation time with the children. They began to argue, and Rhonda struck him in the face. They then began to struggle, but stopped when their youngest daughter came down and turned on the lights.

{¶19} Appellant claimed that when he walked into the kitchen to check his face for injuries, Rhonda followed him and continued to argue. Rhonda grabbed a knife, and a struggle began, with both fighting over the knife. Appellant admitted that he stabbed Rhonda multiple times, and admitted, in graphic detail, that he caused each of her wounds. He acknowledged hearing his youngest daughter say something and his son coming downstairs at one point. He also remembered putting the knife into Rhonda's hand afterwards, but claimed not to know whether she was dead at that point. Dazed, he then went upstairs and was changing his clothes when the police arrived. Appellant asserted that he intended to call 911 but did not have time.

{¶20} The state argued that ample evidence supported a finding that appellant had a prior purpose and a plan to kill Rhonda. First, the state pointed to the unusual fact that appellant was wearing multiple layers of clothing and heavy work gloves at 3:00 a.m. and had two pairs of rubber gloves in his back pocket.  Second, the youngest daughter testified that appellant had a knife in the family room when she saw him standing over Rhonda. Third, three days prior, appellant purchased plastic gloves and carpet cleaner. The state contended that appellant purchased these intending to clean the scene after he killed his wife. Fourth, the interior of the trunk of appellant's company car had plastic sheeting covering it that was weighed down with a pair of shoes appellant used for yard work. Appellant claimed not to know how or why the plastic sheeting was there. Fifth, a quilt was placed on the kitchen table at some point that evening. The state maintained that appellant placed the quilt there intending to carry Rhonda's body to the car.

{¶21} Appellant's attorney argued in closing that the physical evidence showed that the way appellant killed Rhonda demonstrated his lack of a plan or prior purpose to kill; that the killing occurred in a fit of sudden rage during a domestic violence fight; and that, in sum, the evidence fit the definition of voluntary manslaughter. The trial court instructed the jury regarding aggravated murder, and the lesser included offenses of murder and voluntary manslaughter. As stated infra, the jury found appellant guilty of murder.

Doc. 6, Exhibit 27, Case No. L-10-1046 ("*Anaya II*").

4

## II.  Procedural Background

**A.     State Conviction**

On November 1, 2005, the Lucas County Grand Jury issued an indictment charging

Anaya with one count of aggravated murder in violation of Ohio Revised Code § 2903.01(A) and

(F).  Doc. 6, Exhibit 1.  Prior to trial, the trial court referred Anaya to the Court Diagnostic and

Treatment Center for a competency evaluation.  Doc. 6, Exhibit 2.  On January 10, 2006, a

competency hearing was held, but the trial court granted Anaya's request for a second

psychiatric examination and evaluation and continued the matter.  Doc. 6, Exhibit 13, at ¶ 2.  The

second psychiatric examination was for the purposes of evaluation pursuant to Ohio Rev. Code §

2945.371(G)(3) and (G)(4), competency to stand trial and not guilty by reason of insanity.  Doc.

6, Exhibit 4. Anaya was transferred to the forensic unit of the Twin Valley Behavioral

Healthcare Columbus campus for the second psychiatric examination.  Doc. 6, Exhibit 5.

A second competency hearing was held on April 13, 2006, and the reports of three

psychiatric evaluating experts were admitted into evidence.  Doc. 6, Exhibit 6.  As stated by the

Sixth District Court of Appeals, the following testimony was adduced at the hearing:

> **{¶3}** . . . Each of the three expert witnesses testified at the hearing: Dr. Thomas G.
> Sherman, Dr. Charlene A. Cassel, and Dr. Mark Fettman.   Each expert had
> conducted "hundreds" of competency evaluations. Each concluded that appellant
> was "malingering," i.e., feigning mental illness, and was not mentally ill. For
> example, appellant reported that he had nightly conversations with Rhonda and
> did not believe she was dead. He also reported that his internal organs had
> exploded and a metal device had been implanted that Rhonda used to
> communicate with him. Each expert wrote that these were not genuine
> hallucinations but were rather consistent with feigning mental illness. Cassel and
> Fettman concluded that appellant was competent to stand trial, while Sherman
> refrained from giving a solid opinion as to appellant's competency. Sherman and
> Cassel noted that appellant's behavior at the hearing was markedly different from
> his behavior during their evaluations. Fettman, the psychiatrist with Twin Valley,
> noted that appellant had been in residence and under constant observation and that
> no staff had reported appellant exhibiting any symptoms of mental illness. Each
> expert reviewed substantial amounts of material concerning appellant's prior

5

> history in addition to conducting interviews and testing. They each found
> appellant's lack of mental illness history, his graduate-level education, and his
> long professional employment noteworthy.

Doc. 6, Exhibit 13. Based on the testimony of the experts, the three expert reports, Anaya's

statements, and the entire record of the case, the trial court determined that Anaya was competent

to stand trial. Doc. 6, Exhibit 7.

The proceedings moved directly to arraignment and Anaya entered pleas of not guilty and

not guilty by reason of insanity. Doc. 6, Exhibit 7. The trial court gave Anaya one week to file a

written Not Guilty By Reason of Insanity ("NGRI") plea. Doc. 6, Exhibit 6, p. 59. On May 4,

2006, counsel for Anaya was granted leave to withdraw pursuant to Anaya's request and, on

May 9, 2006, Peter G. Rost and Jane Roman were appointed to represent Anaya. No written

NGRI plea was filed by any of Anaya's attorneys. Doc. 6, Exhibit 13, at ¶ 2.

The matter proceeded to a trial by jury on October 10, 2006. The jury returned a verdict

finding Anaya guilty of the lesser offense of murder. Doc. 6, Exhibit 8. On October 17, 2006,

the trial court sentenced Anaya to an indefinite term of fifteen years to life in prison. Doc. 6,

Exhibit 9.

**B.      Direct Appeal**

On November 21, 2006, Anaya, through new counsel, filed a timely notice of appeal to

the Sixth District Court of Appeals, Lucas County, Ohio. Doc. 6, Exhibit 10. In his brief, Anaya

raised the following assignment of error:

> 1. Danny was denied effective assistance of counsel in violation of his rights
>    guaranteed under Article I, Section 10 of the Ohio Constitution and the Sixth
>    Amendment of the United States Constitution.
>
>    A. Counsel failed to adequately delineate the case for voluntary
>       manslaughter.

6

      B. Counsel failed to find an independent forensic psychiatric expert to determine Danny's competency or sanity at the time of the offense.

      C. Counsel was ineffective for failing to plead not guilty by reason of insanity.

Doc. 6, Exhibit 11. The State filed its brief on November 14, 2007. Doc. 6, Exhibit 12. On April 18, 2008, the court of appeals overruled Anaya's assignment of error and affirmed the judgment of the trial court. Doc. 6, Exhibit 13 ("Anaya I").

Anaya failed to file a timely appeal in the Supreme Court of Ohio. On August 22, 2008, Anaya, pro se, filed a notice of appeal and a motion for leave to file a delayed appeal in the Supreme Court of Ohio. Doc. 6, Exhibits 14-15. The Supreme Court of Ohio granted Anaya's motion. *See* Doc. 6, Exhibit 39. In his memorandum in support of jurisdiction, Anaya, pro se, set forth the following proposition of law:

    1. Danny was denied effective assistance of counsel in violation of his rights guaranteed under Article I, Section 10 of the Ohio Constitution and the Sixth Amendment of the United States Constitution.

      A. Counsel failed to adequately delineate the case for voluntary manslaughter.

      B. Counsel failed to find an independent forensic psychiatric expert to determine Danny's competency or sanity at the time of the offense.

      C. Counsel was ineffective for failing to plead not guilty by reason of insanity.

Doc. 6, Exhibit 16. On December 1, 2008, the State filed a memorandum in opposition to jurisdiction. Doc. 6, Exhibit 17. On February 18, 2009, the Supreme Court of Ohio denied Anaya leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Doc. 6, Exhibit 18.

## C.      State Post-Conviction Motion and Subsequent Proceedings

On December 14, 2009, Anaya, through counsel, filed a "Motion of the Defense to Correct Status of Void Sentencing Entry" in the Lucas County Common Pleas Court.  In this motion, Anaya argued that the trial court's October 17, 2006, judgment entry of conviction was void because it did not set forth the basis for conviction as required by *State v. Baker*, 119 Ohio St. 3d 197, 893 N.E.2d 163 (2008).  Doc. 6, Exhibit 19.  On December 30, 2009, the State filed a brief in opposition to Anaya's motion.  Doc. 6, Exhibit 20.  On February 5, 2010, the trial court granted Anaya's motion, in part, and determined that it would issue a nunc pro tunc order to comply with Criminal Rule 32(C).  Doc. 6, Exhibit 21.  The trial court issued the nunc pro tunc judgment entry on February 5, 2010.  Doc. 6, Exhibit 22.

On February 17, 2010, Anaya, through counsel, filed a timely notice of appeal to the Sixth District Court of Appeals.  Doc. 6, Exhibit 23.  In his merit brief, Anaya set forth the following assignments of error:

1.  Mr. Anaya was denied his right under the Ohio Constitution and under the United States Constitution to effective assistance of counsel, in that counsel failed to adequately present to the jury the case for voluntary manslaughter.

2.  Mr. Anaya was denied his right under the Ohio Constitution and under the United States Constitution to effective assistance of counsel, in that counsel failed to find an independent forensic psychiatric expert to determine Danny's competency or sanity at the time for the offense.

3.  Mr. Anaya was denied his right under the Ohio Constitution and under the United States Constitution to effective assistance of counsel, in that counsel refused to enter a written plea of not guilty by reason of insanity as demanded by Mr. Anaya.

4.  Mr. Anaya was denied his right under the Ohio Constitution and under the United States Constitution to effective assistance of counsel, in that counsel failed to handle the self-defense affirmative defense in a reasonable manner, failed to properly investigate the DNA evidence, failed to request 16(B)(1)(g) discovery, and allowed a misleading instruction to the jury as to voluntary manslaughter.

8

5.  The trial court erred in its jury instruction as to voluntary manslaughter, by implying that the conviction must be for murder if the mens rea was purposeful and the inferior degree murder offense of voluntary manslaughter applied only if the mens rea was knowingly and not purposeful.

6.  Mr. Anaya was denied his right under the Ohio Constitution and under the United States Constitution to counsel of his choice, in that the trial court allowed the State of Ohio to unlawfully and without due process freeze the assets of Mr. Anaya, such that he could not retain counsel of his choice.

Doc. 6, Exhibit 24.  On June 25, 2010, the State filed a responsive brief, arguing that Anaya's re-appeal should be barred.  Alternatively, the State addressed the merits of Anaya's claims.  Doc. 6, Exhibit 25.  On December 10, 2010, the court of appeals overruled Anaya's assignments of error and affirmed the judgment of the trial court.  Doc. 6, Exhibit 27.

On December 16, 2010, Anaya filed a timely appeal in the Supreme Court of Ohio.  Doc. 6, Exhibit 28.  In his memorandum in support of jurisdiction, Anaya, through counsel, set forth the following propositions of law:

1.  Mr. Anaya was denied his right under the Ohio Constitution and under the United States Constitution to effective assistance of counsel in that:

A.  Counsel failed to adequately present to the jury the case for voluntary manslaughter.

B.  Counsel failed to find an independent forensic psychiatric expert to determine Danny's competency or sanity at the time of the offense.

C.  Counsel refused to enter a written plea of not guilty by reason of insanity as demanded by Mr. Anaya.

D.  Counsel failed to handle the self-defense affirmative defense in a reasonable manner, failed to properly investigate the DNA evidence, failed to request 16(B)(1)(g) discovery and allowed a misleading instruction to the jury as to voluntary manslaughter.

2.  The trial court erred in its jury instruction as to voluntary manslaughter, by implying that the conviction must be for murder if the *mens rea* was purposeful and that the inferior degree murder offense of voluntary manslaughter applied only if the *mens rea* was knowingly and not purposeful.

9

> 3.  Mr. Anaya was denied his right under the Ohio Constitution and under the United States Constitution to counsel of his choice, in that the trial court allowed the State of Ohio to unlawfully and without due process freeze the assets of Mr. Anaya, such that he could not retain counsel of his choice.

Doc. 6, Exhibit 29.  The State filed a memorandum in opposition to jurisdiction on January 18, 2011.  Doc. 6, Exhibit 30.  On March 16, 2011, the Supreme Court of Ohio denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  Doc. 6, Exhibit 31.

**D.      First Federal Habeas Corpus Petition**

Meanwhile, on April 13, 2010, Anaya, though counsel, filed his first petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his petition, Anaya asserted the following ground for relief:

> **GROUND ONE**: Mr. Anaya was denied the effective assistance of counsel, in violation of his due process rights under the Fourteenth Amendment as incorporating the Sixth Amendment to State prosecutions for felony offenses.
>
> **Supporting Facts**: Trial counsel failed to adequately present to the jury the case for voluntary manslaughter, despite evidentiary support for the same. Trial counsel also failed to find an independent forensic psychiatric expert to determine Danny's competency or sanity at the time of the offense. Finally, trial counsel refused to enter a written plea of not guilty by reason of insanity, as demanded by Mr. Anaya. Whereas trial strategy is best left to the wise counsel of the attorney of the defense, the decision as to how to plead is solely that of the accused. Trial counsel is not permitted to pre-determine the strength of the defense plea and to fail to act accordingly.

Case No. 3:10-cv-00760, Doc. 1 (Polster, J.).  On April 21, 2011, Anaya filed an unopposed Motion for Leave to Voluntarily Dismiss his federal habeas petition.  Case No. 3:10-cv-00760, Doc. 10.  On April 27, 2011, this Court granted Anaya's motion and dismissed the case.  Case No. 3:10-cv-00760, Doc. 12.

**E.     Second Federal Habeas Corpus Petition**

On April 21, 2011, Anaya, though counsel, filed his second petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. In his petition, Anaya asserted the following grounds for relief:

> **GROUND ONE**: Mr. Anaya was denied his right under the Unites States Constitution to effective assistance of counsel.
>
> **Supporting Facts**: Counsel failed to adequately present to the jury the case for voluntary manslaughter. Counsel failed to find an independent forensic psychiatric expert to determine Danny's competency or sanity at the time of the offense. Counsel refused to enter a written plea of not guilty by reason of insanity, as demanded by Mr. Anaya. Counsel failed to handle the self-defense affirmative defense in a reasonable manner, failed to properly investigate the DNA evidence, failed to request 16(b)(1)(g) discovery, and allowed a misleading instruction to the jury as to voluntary manslaughter.
>
> **GROUND TWO**: The Trial Court erred in its jury instruction as to voluntary manslaughter, by implying that the conviction must be for murder if the mens rea was purposeful and that the inferior degree murder defense of voluntary manslaughter applied only if the mens rea was knowingly and not purposeful.
>
> **Supporting Facts**: The Trial Court erred in its jury instruction as to voluntary manslaughter by implying that the conviction must be for murder if the mens rea was purposeful and that the inferior degree murder offense of voluntary manslaughter applied only if the mens rea was knowingly and not purposeful
>
> **GROUND THREE**: Mr. Anaya was denied his right under the Ohio Constitution and under the United States Constitution to Counsel of his choice, in that the Trial Court allowed the State of Ohio to unlawfully and without due process freeze the assets of Mr. Anaya, such that he could not retain counsel of his choice.
>
> **Supporting Facts:** Law enforcement seized $ 1,775 in cash and gold rings during the search, which could have been used by Anaya to retain counsel of his choice. These items were of no evidentiary value; of 131 exhibits introduced at trial, none of these items were introduced as evidence. Anaya filed a Motion to Release certain Exhibits Being held as Evidence, seeking release of this property, arguing that "the items requested have no evidentiary value to the State of Ohio". The Trial Court denied this request for no reason. No finding of probable cause to believe that this evidence was subject to forfeiture, let alone had any evidentiary value, was provided. This is a simple grabbing by the government of $ 1,775.10 in cash, and three gold rings as assets for no reason. This resulted in creating indigency and depriving Anaya of counsel of his choice.

Doc. 1, pp. 6-10.  On August 12, 2011, Respondent filed his Answer/Return of Writ.  Doc. 6.  On

September 8, 2011, Anaya filed his Traverse.  Doc. 8.

### III.  Law & Analysis

**A.  Procedural Barriers to Review**

Respondent argues that Anaya has procedurally defaulted his second ground for relief

because he did not lodge a contemporaneous objection at trial to the jury instruction he now

challenges.  In general, a petitioner must meet certain procedural requirements in order to have

his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430

(6th Cir. 2006).  "Procedural barriers, such as statutes of limitations and rules concerning

procedural default and exhaustion of remedies, operate to limit access to review on the merits of

a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381, 121 S.Ct. 1578 (2001).[2]

Under the procedural default hurdle, a federal court may not consider "contentions of

general law which are not resolved on the merits in the state proceeding due to petitioner's

failure to raise them as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87, 97

S.Ct. 2497 (1977).  A habeas petitioner can procedurally default a claim in two ways.  *Williams*

*v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  First, if the petitioner has not fairly presented a

claim to the state courts and, at the time he files his habeas petition, state law no longer allows

him to raise it in the state courts, the claim is procedurally defaulted.  *Id.*  "Where state court

remedies are no longer available to a petitioner because he or she failed to use them within the

required time period, procedural default and not exhaustion bars federal court review."  *Williams*,

460 F.3d at 806.  Second, a petitioner procedurally defaults a claim if he fails "to comply with

state procedural rules in presenting his claim to the appropriate state court."  *Id.*

---

[2]  The AEDPA statute of limitations for filing a petition for a writ of habeas corpus is one year and it begins to run on the date judgment became final. 28 U.S.C. § 2244(d)(1).  The statute of limitations is not at issue in this case. Exhaustion is also not at issue in this case.

In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit established a four-part test to determine whether a claim is procedurally defaulted. 785 F.2d at 138. This test requires federal habeas courts to determine: (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state court actually enforced the state procedural rule, (3) whether the state procedural rule was an "independent and adequate" state ground on which the state could rely to foreclose review of a federal constitutional claim, and (4) if the above are met, whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *Id*. at 138-39.

In his second ground for relief, Anaya alleges that the trial court erred in its jury instruction for voluntary manslaughter because it implied that the conviction must be for murder if the mens rea was purposeful and that the lesser offense of voluntary manslaughter only applied if the mens rea was knowingly and not purposeful. Doc. 1, p. 8. Respondent argues that this claim is procedurally defaulted because Anaya did not lodge a contemporaneous objection to the jury instruction at trial. In reply, Anaya contends that his second ground for relief is not procedurally defaulted because the state appellate court undertook a plain error analysis and, therefore, did not rest its decision on a procedural bar.

Ohio's contemporaneous objection rule is applicable. Under that rule, if an appellant could have made an objection to a ruling at trial but failed to do so, the appellant has waived appellate review of the challenge unless he shows plain error. *See, e.g., Gulertekin v. Tinnelman–Cooper*, 340 F.3d 415, 423–24 (6th Cir. 2003) (and cases cited therein); *Osborne v. Ohio*, 495 U.S. 103, 124, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (recognizing Ohio's long-standing contemporaneous objection rule). The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring

federal review.  *See, e.g., Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011) (citing *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001)); *White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005); *see also State v. Murphy*, 91 Ohio St.3d 516, 747 N.E.2d 765, 788 (2001) (noting that Ohio's "waiver rule," which "requires that a party make a contemporaneous objection to alleged trial error in order to preserve that error for appellate review," is "of long standing" and "goes to the heart of the adversary system of justice").  Further, the Sixth Circuit has repeatedly held that "plain error" review by the state appellate court "constitutes enforcement of Ohio's contemporaneous objection rule."  *Williams v. Bagley*, 380 F.3d 932, 968–69 (6th Cir. 2004) (and Sixth Circuit cases cited therein); *see also Goodwin*, 632 F.3d at 315.

In this case, Anaya did not object to the jury instruction on voluntary manslaughter at trial.  In his second direct appeal, in *Anaya II*, the state court of appeals clearly and expressly enforced the state procedural rule in rejecting Anaya's claim that the jury instructions on the lesser offense of voluntary manslaughter were incorrect. Doc. 6, Exhibit 27, at ¶¶ 42-43.  The court explicitly stated that, because Anaya failed to object to the jury instruction on voluntary manslaughter, the claim could only be reviewed for plain error. Doc. 6, Exhibit 27, at ¶¶ 42-43. The court then conducted a plain-error review and found no merit in Anaya's claim.  Doc. 6, Exhibit 27, at ¶¶ 42-43.  The first three elements of *Maupin* are therefore satisfied and Anaya's claim that the jury instructions on voluntary manslaughter were incorrect is procedurally defaulted unless he can show cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice.  *Williams v. Anderson*, 460 F.3d 789, 805-806 (6th Cir. 2006) (citing *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006)).  Anaya does not argue cause to excuse his procedural default and no cause is apparent from the record.  Similarly, he has not claimed any "prejudice," or a "fundamental

miscarriage of justice."  Accordingly, the *Maupin* test is satisfied and procedural default bars habeas relief with regard to Anaya's second ground for relief.  The second ground for relief should therefore be dismissed.

**B.**     **Merits Review**

**1.**     **AEDPA Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when the state court decides a federal constitutional claim on the merits, the federal habeas court must defer to the state court decision unless: (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).  A state court decision is "contrary to" clearly established federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)).  A state court's adjudication only results in an "unreasonable application" of clearly established federal law when the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Id.* at 599-600 (quoting *Williams*, 529 U.S. at 413).

To obtain federal habeas corpus relief, a petitioner must establish that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v.*

*Dixon*, ___ U.S.___, 132 S.Ct. 26, 181 L.Ed.2d 328, 2011 WL 5299458, at *1 (Nov. 7, 2011)

(quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–87 (2011). This bar is

"difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state

criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*,

131 S.Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d

560 (1979) (Stevens, J., concurring in judgment)). "A state court's determination that a claim

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652,

664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)). The petitioner carries the burden of proof.

*Cullen v. Pinholster,* ___ U.S. ___, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011). Anaya has

not met his burden in this case.

###### a.  Ground One – Ineffective Assistance of Counsel

In his first ground for relief, Anaya contends that he was denied the effective assistance

of counsel at trial. Specifically, he argues that trial counsel (1) failed to adequately present to the

jury the case for voluntary manslaughter, (2) failed to find an independent forensic psychiatric

expert to determine Anaya's competency or sanity at the time of the offense, and (3) failed to

enter a written plea of not guilty by reason of insanity, (4) failed to request an instruction on self

defense or to make a case for self defense in his closing argument, (5) failed to properly

investigate the DNA evidence, (6) failed to request Crim.R. 16(B)(1)(g) discovery, and (7)

allowed a misleading instruction to the jury as to voluntary manslaughter. Doc. 1, p. 6. These

claims are without merit.

The Sixth Amendment recognizes the right of every criminal defendant to effective

assistance of counsel. U.S. Const., Amend. VI. Claims of ineffective assistance of counsel are

analyzed under the well established two-pronged test announced in *Strickland v. Washington,*
466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on this claim, Anaya
must demonstrate that the performance of his trial counsel was deficient and that he suffered
prejudice as a result. *Id.*; *Foust v. Houk*, 655 F.3d 524, 533 (6th Cir. 2011). To show deficiency,
Anaya must overcome the "strong[ ] presum[ption]" that his counsel "rendered adequate
assistance and made all significant decisions in the exercise of reasonable professional
judgment." *Strickland*, 466 U.S. at 690. To demonstrate prejudice, Anaya must "show that there
is a reasonable probability that, but for counsel's unprofessional errors, the result of the
proceeding would have been different." *Id.* at 694. This means he must show a "'substantial,'
not just 'conceivable,' likelihood of a different result." *Pinholster*, 131 S.Ct. at 1403 (quoting
*Richter*, 131 S.Ct. at 791).

In *Richter*, the Supreme Court again underlined the difficulty of prevailing on a
*Strickland* claim in the context of habeas and AEDPA; it requires the petitioner not only to
demonstrate the merit of his underlying *Strickland* claim, but also to demonstrate that "there is
no possibility fairminded jurists could disagree that the state court's decision [rejecting the
*Strickland* claim] conflicts with this Court's precedents." *Richter,* 131 S.Ct. at 786 (noting that
this was "meant to be" a difficult standard to meet). Considering that *Strickland*'s own standard
invites deference to the conduct of counsel, *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052,
combining that standard with that set forth in the AEDPA creates a "doubly" deferential
standard, *Richter,* 131 S.Ct. at 788 (also noting that "[t]he *Strickland* standard is a general one,
so the range of reasonable applications is substantial"). Thus, as explained by the Sixth Circuit,
a habeas court's "significantly constrained review of [an ineffective assistance of counsel claim]
boils down to the determination of whether 'there is any reasonable argument that counsel

satisfied *Strickland*'s deferential standard.'"  *Jackson v. Houk*, 687 F.3d 723, 741 (6th Cir. 2012) (quoting *Richter*, 131 S.Ct. at 788).

As set forth above, Anaya asserted his ineffective assistance of trial counsel claims in both of his direct appeals.  Doc. 6, Exhibits 11 and 24.  In addressing the merits of these claims, in both *Anaya I* and *Anaya II*, the state court of appeals correctly recognized that *Strickland* governs claims of ineffective assistance of counsel.  Doc. 6, Exhibit 13, ¶¶ 24-25, Exhibit 27, ¶¶ 24-25.  Each of Anaya's seven sub-claims, as well as the state appellate court's analysis of such claims under *Strickland,* will be addressed in turn.

### i.  Failure to Adequately Present to the Jury the Case for Voluntary Manslaughter

In his first sub-claim, Anaya argues that his counsels' performance was deficient because they failed to present an adequate case for voluntary manslaughter at trial.  Anaya raised this claim in both *Anaya I* and *Anaya II*.  On his first appeal, the state court of appeals rejected this claim, stating:

> **{¶26}** Appellant first argues that his trial counsel did not advocate strenuously enough for a verdict of voluntary manslaughter. We disagree. Appellant primarily argues that his counsel should have submitted more evidence or elicited more testimony regarding his mental health issues and medical issues in order to demonstrate provocation. Having carefully reviewed the evidence and the arguments, we find that even if appellant's counsel had done what he suggests, the decision would not likely have been different. Counsel pointed to DNA evidence, the chronology, appellant's testimony, the patterns of knife wounds, and the circumstances of the divorce to buttress the theory that Rhonda instigated a physical struggle and provoked appellant to use deadly force. Even if counsel had elicited further testimony from appellant regarding the mental states which he had revealed to the three evaluating experts, it would likely have had no impact on the jury's decision. Appellant also argues that his counsel spent most of closing arguments rebutting the state's case for aggravated murder and should have, instead, argued more vehemently for voluntary manslaughter. After carefully reviewing both the record and closing arguments, counsel pursued a reasonable trial strategy given the evidence against appellant.

Doc. 6, Exhibit 13.  The state appellate court also rejected this claim in Anaya's second appeal:

**{¶26}** Voluntary manslaughter is an inferior degree of murder. *State v. Shane* (1992), 63 Ohio St.3d 630, 632, 590 N.E.2d 272. The elements of voluntary manslaughter are: "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another * * *." R.C. 2903.03(A). Appellant argues that his trial counsel breached his duty to his client by failing to adduce the facts at trial that related to his "emotional and mental anguish" and to the provocation that caused him to repeatedly stab his wife.

**{¶27}** As we pointed out in our previous decision, appellant's trial counsel used DNA evidence, the chronology leading to the stabbing, the pattern of the knife wounds, and the circumstances surrounding the parties' divorce to support the argument that it was Rhonda who initiated the physical struggle and provoked appellant to use deadly force. Furthermore, defense counsel did request an instruction on voluntary manslaughter, which was given to the jury. Thus, due to the evidence offered against appellant, we find that the strategy employed by appellant's trial counsel was reasonable. Appellant's Assignment of Error No. I is found to be without merit.

Doc. 6, Exhibit 27.

Anaya has failed to show that the decisions of the state appellate court rejecting his first sub-claim were contrary to, or unreasonable applications of, *Strickland*. Decisions as to what evidence to present at trial are generally presumed to be a matter of trial strategy. *See Chegwidden v. Kapture*, 92 Fed. App'x. 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). However, even when making strategic decisions, counsel's conduct must be reasonable. *See Roe v. Flores–Ortega*, 528 U.S. 470, 481, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000); *see Wiggins v. Smith,* 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). The failure to call witnesses or present evidence constitutes ineffective assistance only when it deprives a defendant of a material defense. *See Chegwidden*, 92 F. App'x at 311.

Anaya argues that his trial counsel failed to present an adequate case for voluntary manslaughter at trial. For example, he argues that counsel should have presented more evidence as to the "conditions and events that surrounded [Anaya] in October 2005." Doc. 7, p. 12.

Anaya contends that this additional evidence would have convinced the jury that he committed voluntary manslaughter, not murder, because he was overwhelmed with fit of passion or rage occasioned by the victim.  Doc. 7, pp. 12-14.  However, as discussed by the state appellate court, these arguments are unpersuasive.  At trial, counsel did request an instruction for voluntary manslaughter, which was in fact given to the jury.  In addition, counsel used DNA evidence, the chronology leading to the stabbing, the pattern of the knife wounds, and the circumstances surrounding the parties' divorce to support the argument that it was Anaya's wife who initiated the physical struggle and provoked Anaya to use of deadly force.  The fact that Anaya was ultimately convicted of murder and not voluntary manslaughter is not enough to render counsel's strategic choice ineffective.  Anaya's argument to the contrary is based purely on speculation, which cannot form the basis for federal habeas relief.  *See Wood v. Bartholomew*, 516 U.S. 1, 8, 116 S.Ct. 7, 133 L.Ed.2d 1 (1995) (federal courts may not "grant[ ] habeas relief on the basis of little more than speculation with slight support").  The state appellate courts' determinations were not contrary to, or objectively unreasonable applications of *Strickland*, and are therefore entitled to deference.  Anaya is not entitled to relief on his first sub-claim.

### ii.    Failure to Retain an Independent Psychiatric Expert

In his second sub-claim, Anaya argues that his trial counsel were ineffective because they failed to retain an independent forensic psychiatric expert to determine Anaya's competency or sanity at the time of the offense.  Again, Anaya raised this claim in both *Anaya I* and *Anaya II*.  On his first appeal, the state court of appeals overruled this claim, stating:

> {¶27} Next, appellant argues that his trial counsel should have secured an independent forensic psychiatric expert to determine his sanity at the time of the offense. This assertion resembles the argument found not well-taken in *State v. Johnson*, 1st Dist. No. C-030643, 2004 Ohio 3624. The *Johnson* court held that in order for the defendant to prevail on a claim of ineffective assistance, he had to show a reasonable probability that he would have been found not guilty by reason

of insanity if another psychiatric evaluation had been performed. *Id.* at ¶12. Johnson's counsel raised the issue of his competency and entered a plea of not guilty by reason of insanity. The court ordered a psychiatric evaluation, which concluded that Johnson was malingering, was feigning a mental disorder, was competent to stand trial, and did not meet the criteria for an NGRI defense. Johnson's counsel then waived the opportunity for the second, independent evaluation allowed by R.C. 2945.371(B). Considering the expert evaluation and the totality of the evidence at trial, the court held that the argument was "too speculative" because Johnson did not show a "reasonable probability that an additional expert evaluation would have changed the result of his case." *Johnson*, 2004 Ohio 3624, ¶21.

{¶28} The same analysis applies here. Three separate experts conducted examinations and rendered evaluations to the court. Each expert independently concluded that appellant did not suffer from a mental illness and showed signs of malingering. Considering the concurrence of three separate expert evaluations, there is no reasonable probability that yet another expert evaluation would have changed the result of this case.

Doc. 6, Exhibit 13.  The court also rejected this claim in Anaya's second appeal:

{¶28} In his Assignment of Error No. II, Anaya argues that trial counsel was ineffective because he "failed to locate an independent psychologist who could perform a forensic evaluation to determine [appellant's] competency and sanity at the time of the murder."

{¶29} Prior to trial, appellant was examined by two psychiatrists, Dr. Thomas Sherman and Dr. Mark Fetterman. In addition, Anaya was referred to the Court Diagnostic and Treatment Center where he was examined by Charlene A. Cassel, a psychologist. Dr. Cassel rendered the following opinion:

{¶30} "Based upon my examination of Mr. Anaya, I am of the opinion that he is malingering. He is faking mental illness as a way of avoiding the consequences of his current position with the court. It is my opinion to a reasonable degree of psychological certainty that Mr. Anaya is able to understand the nature and objectives of the proceedings against him and to assist his attorney in his defense. * * * I am of the opinion that any lack of cooperation or inability to proceed is the result of malingering."

{¶31} In his report, Dr. Sherman indicated that it appeared that appellant was making a "purposeful attempt to make himself 'look' mentally ill." Dr. Sherman concluded that he could not make a diagnosis as to appellant's competence to stand trial, and recommended that Anaya be observed in a forensic inpatient unit.

{¶32} Appellant was, therefore, admitted as an inpatient at Twin Valley Behavioral Healthcare for a competency to stand trial evaluation and a sanity

evaluation. In his report, Dr. Mark S. Fetterman, who is the psychiatrist who examined appellant at that facility, was of the opinion to "a reasonable degree of medical certainty that Mr. Danny Anaya has no mental illness and understands the nature and object of the legal proceedings against him and has the ability to assist in his defense if he chooses. He may choose not to cooperate because he is acting as if he is mentally ill because he feels that this will either delay his trial or win his freedom in some manner he is hoping for."

{¶33} Because appellant was evaluated by three different experts who concluded that he was not suffering from any mental illness, we find that there was no reasonable probability that yet another expert evaluation would have changed the outcome in the case before us. See *State v. Johnson*, 1st Dist. No. C-030643, 2004 Ohio 3624, ¶ 20-21. Therefore, trial counsel did not fail in any duty to his client by not seeking yet another psychiatric expert, and appellant's Assignment of Error No. II is found not well-taken.

Doc. 6, Exhibit 27.

Anaya has failed to establish that the state appellate court's decisions were contrary to, or unreasonable applications of, *Strickland*.  First, it should be noted that, at his competency hearing, Anaya specifically requested that he be permitted to be evaluated by another independent psychologist at his expense.  Doc. 6, Exhibit 6, pp. 10-11.  The trial court denied the request.  Doc. 6, Exhibit 6, p. 11.  Because Anaya personally made the request to retain an independent psychologist and the request was denied by the trial court, the failure of trial counsel to make a similar request did not constitute deficient performance because any such request would have been futile.  In other words, Anaya cannot show prejudice by the failure of his trial counsel to make a duplicate request for an evaluation by an independent psychiatric expert.

Second, as the state appellate court noted, three separate experts examined Anaya and provided opinions to the trial court regarding Anaya's competency.  Doc. 6, Exhibit 27, ¶¶ 29, 33.  Each expert independently concluded that Anaya did not suffer from a mental illness and that he showed signs of malingering.  Doc. 6, Exhibit 6, pp. 17-21, 31-33, 46-47, 53; Exhibit 27, ¶¶ 30-33.  The state appellate court reasonably determined that, considering the concurrence of

three separate expert evaluations, there was no reasonable probability that yet another expert evaluation would have changed the result of this case.  Doc. 6, Exhibit 27, ¶ 33.  The decision not to retain an independent psychiatric expert to assess Anaya's competency to stand trial was a reasonable strategic choice because this additional evidence would have been of little help.  It cannot be said that his trial counsel were ineffective.  Accordingly, the state appellate courts' determinations were not contrary to, or objectively unreasonable applications of, *Strickland*. Anaya is therefore not entitled to relief on his second sub-claim.

### iii. Failure to Enter a Written Plea of Not Guilty by Reason of Insanity

Anaya asserts in his third sub-claim that his trial counsel were ineffective because they failed to enter a written plea of not guilty by reason of insanity.  Anaya presented this claim in both of his direct appeals.  In *Anaya I*, the state appellate court rejected this claim, stating:

{¶29} Last, appellant asserts that he was denied ineffective assistance of counsel because none of his lawyers filed a written plea of not guilty by reason of insanity after his first counsel orally entered the plea at the end of the competency hearing. Where facts and circumstances indicate that a plea of not guilty by reason of insanity would have had a reasonable probability of success, it is ineffective assistance of counsel to fail to enter the plea. *State v. Brown* (1992), 84 Ohio App.3d 414. Where, however, facts indicate that counsel was pursuing a reasonable strategy in not so pleading, or where the likelihood of success for the plea is low, the decision is not unreasonable. *State v. Twyman*, 2d Dist. No. 19086, 2002 Ohio 3558 (defendant had mental health disorder but no reasonable probability he would have been acquitted by reason of insanity); *State v. Martin*, 12th Dist. Nos. CA2003-06-065, CA2003-06-066, 2004 Ohio 702 (same); *State v. Robinson*, 6th Dist. No. L-03-1307, 2005 Ohio 5266, ¶33 (psychological evaluations and defendant's testimony showed counsel's decision not to seek insanity defendant was reasonable); *State v. Johnson*, 2004 Ohio 3624.

{¶30} Given the evidence submitted during the competency hearings, counsel was not unreasonable for not entering an insanity plea. Moreover, the record demonstrates that appellant testified against the advice of his counsel, and admitted during his testimony to killing his wife. Counsel's strategy of ameliorating appellant's admissions by making the case for voluntary manslaughter instead of pursuing an acquittal by reason of insanity falls within the range of competent professional assistance.

23

Doc. 6, Exhibit 13.  The state court also rejected this claim in *Anaya II*:

> **{¶34}** Appellant's Assignment of Error No. III urges that his trial counsel was ineffective by failing to enter a written plea of not guilty by reason of insanity. In those circumstances which indicate that the likelihood of entering a plea of not guilty by reason of insanity would be unsuccessful, appointed counsel's decision not to enter that plea is not unreasonable. See *State v. Robinson*, 6th Dist. No. L-03-1307, 2005 Ohio 5266, ¶ 33. Here, all three experts agreed that appellant was feigning mental illness. Consequently, counsel could reasonably decide not to enter a not guilty by reason of insanity plea. Appellant's Assignment of Error No. III is found not well-taken.

Doc. 6, Exhibit 27.

Anaya has again failed to establish that the state appellate court's decisions are contrary to, or an unreasonable application of, *Strickland*.  As noted in *Strickand,* "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.  In *Weekley v. Jones*, 76 F.3d 1459, 1462 (8th Cir. 1996) (en banc), the court rejected a claim of ineffective assistance for counsel's failure to pursue a defense of not guilty by reason of insanity.  In doing so, the court recognized that, while pleading in the alternative is legally permissible, "there is much respectable opinion to the effect that jurors are put off by it and regard it with suspicion. In fact, there is considerable empirical evidence that insanity pleas in and of themselves are not received favorably by jurors." *Id.* at 1463.  Here, counsels' failure to pursue a insanity defense appears to be a sound trial tactic, especially in light of the fact that three separate expert witnesses concluded that Anaya was not mentally ill.  Indeed, it appears that the insanity defense would have been unsuccessful and, in fact, may have inflamed the jury had it been argued.  Counsels' decision not to pursue an insanity defense must therefore be understood as a strategic one, absent any compelling evidence to the contrary.  And, it cannot be said that the decision was

24

unreasonable in light of the three expert opinions regarding Anaya's mental condition.[3]  The state appellate court's decision is therefore entitled to deference and Anaya's third sub-claim is without merit.

### iv.  Failure to Handle the Self-Defense Affirmative Defense in a Reasonable Manner

Anaya's fourth sub-claim is confusing, at best.  In his petition, it appears that Anaya is arguing that his trial counsel were ineffective because they failed to assert a self-defense claim. Doc. 1, p. 6.  In his Traverse, however, Anaya clarifies his argument and explains that his counsel were ineffective because they failed to present a cohesive case.  Doc. 7, pp. 17-18.  In short, he claims that the presentation of the case was confusing because counsel elicited testimony from Anaya that would have supported a claim of self-defense, but then argued that Anaya was provoked into killing his wife, thus confusing two separate defense strategies.  Doc. 7, pp. 17-18.  Anaya contends that this strategy was unsound because the self-defense claim was lost, as no jury instruction was provided on self-defense, and because the lack of focus in the presentation of the evidence resulted in a potentially confusing presentation of evidence to the jury on voluntary manslaughter, i.e., whether Anaya was provoked into killing his wife.  Doc. 7, pp. 17-18.  Anaya asserted this claim in his second appeal and the state court of appeals rejected the claim, stating:

> {¶36} In the present case, Cynthia Bessier, M.D., a deputy coroner and forensic pathologist, testified that Rhonda died of multiple stab wounds, with at least two of those wounds--one in the neck and the other in the heart--classified as fatal in and of themselves. The victim also had a number of defensive knife wounds on her hands. The only "wounds" suffered by appellant were some scratches on his face. After all of the evidence was placed before the jury, the trial court provided the parties with a set of jury instructions that included an instruction on self

---

[3] To the extent that Anaya's argument can be framed as counsels' failure to procure a mental health expert whose *conclusions were favorable* to Anaya, this claim must also fail.  A petitioner does not have a constitutional right to an expert whose conclusions favor the petitioner.  *Lundgren v. Mitchell*, 440 F.3d 754, 772 (6th Cir. 2006) (citing *Ake v. Oklahoma,* 470 U.S. 68, 83, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)).

defense. Nonetheless, appellant's trial counsel, after conferring with his client, decided not to request the instruction on self defense.

**{¶37}** Self defense is an affirmative defense. *State v. Jackson* (1986), 22 Ohio St.3d 281, 283, 22 Ohio B. 452, 490 N.E.2d 893. In order to raise this defense, appellant was required to prove, by a preponderance of the evidence that: (1) he did not create the situation giving rise to the fight; (2) he "had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force;" and (3) he did not "violate any duty to retreat or avoid the danger." *State v. Gillespie*, 172 Ohio App.3d 304, 308, 2007 Ohio 3439, ¶ 12, 874 N.E.2d 870. Moreover, this defense was not available to appellant unless he demonstrated that the force he used "to repel the danger was not more than the situation reasonably demanded." *State v. Johnson*, 6th Dist. No. L-08-1385, 2009 Ohio 3500, ¶ 12. Thus, if appellant used a greater degree of force than was necessary under the circumstances, his actions were not justifiable on the ground of self defense. *Id*., citing *State v. McLeod* (1948), 82 Ohio App. 155, 157, 50 Ohio Law Abs. 475, 80 N.E.2d 699.

**{¶38}** We shall assume the truth of appellant's testimony wherein he stated that it was Rhonda who took the large knife out of a kitchen drawer and threatened him with that knife. Nonetheless, his subsequent action in taking this knife and stabbing his wife multiple times with greater force than necessary under the circumstances rendered any claim of self defense unjustifiable. Consequently, we conclude that appellant's trial counsel was not ineffective in this regard.

Doc. 6, Exhibit 27.

The state appellate court's decision rejecting Anaya's claim was not contrary to, or an unreasonable application of, *Strickland*. As noted by the state court of appeals, under Ohio law, there are limitations to the application of self-defense. As set forth *State v. Johnson*, which was cited by the state appellate court:

The defense is not available unless the defendant shows that the force used to repel the danger was not more than the situation reasonably demanded. *Close v. Cooper* (1877), 34 Ohio St. 98, 100. "One may use such force as the circumstances require." *Chillicothe v. Knight* (1992), 75 Ohio App.3d 544, 550, 599 N.E.2d 871. The defense is not applicable "if the force is so grossly disproportionate to [the] apparent danger as to show revenge or an evil purpose to injure." *State v. Weston* (July 16, 1999), 4th Dist No. 97CA31. "The force used to defend must be objectively necessary and reasonable under the facts and circumstances of the case and in view of the danger apprehended." *Martin v. Cent. Ohio Transit Auth*. (1990), 70 Ohio App.3d 83, 93, 590 N.E.2d 411. When one uses a greater degree of force than is necessary under all the circumstances, it

is not justifiable on the ground of self-defense. *State v. McLeod* (1948), 82 Ohio App. 155, 157, 80 N.E.2d 699.

*State v. Johnson*, No. L-08-1385, 2009 Ohio 3500, ¶ 12 (Ohio App. 6 Dist. 2009).

In apparent recognition of the limitations of a claim of self-defense, Anaya's trial counsel, after conferring with Anaya, decided not to request the instruction on self-defense. Doc. 6, Tr. Vol. IV, pp. 985-86. Given the facts of this case, counsels' decision not to pursue a self-defense claim was a reasonable strategic decision. As determined by the state court of appeals, even if Anaya's wife threatened him with the knife and actually attacked him first, Anaya's actions in taking the knife and stabbing her multiple times with greater force than necessary under the circumstances rendered any claim of self-defense unjustifiable. Thus, to the extent that Anaya claims that his counsel were ineffective for failure to assert a claim of self-defense, such a claim is without merit.

Moreover, Anaya has failed to establish that defense counsels' presentation of the evidence or its arguments to the jury were unreasonable or otherwise deprived him of a material defense. The jury was instructed on voluntary manslaughter. Again, simply because the jury found Anaya guilty of murder does not mean that trial counsels' trial strategy was unreasonable. Anaya's arguments to the contrary are purely speculation, which cannot form the basis of habeas relief. As such, to the extent that Anaya challenged the manner in which counsel presented evidence or framed their arguments regarding self-defense and voluntary manslaughter, such a claim is also meritless. The state appellate court's decision was not contrary to, or an unreasonable application of, *Strickland*. Anaya is not entitled to relief on this claim.

v.      **Failure to Properly Investigate the DNA Evidence**

For his fifth sub-claim, Anaya claims that his counsel was ineffective because he did not

properly investigate the DNA evidence from the crime scene.  Anaya asserted this claim in

*Anaya II*.  The state court of appeals rejected this claim, stating:

> **{¶39}** Appellant next claims that defense counsel was ineffective because he
> failed to request DNA testing of the blood that was found on the sofa because
> such testing would have supported his testimony that his wife attacked him when
> she was on the sofa. Assuming, for the sake of argument, that it would have
> shown that Rhonda initiated the physical fight, this would be relevant to a claim
> of self defense, which we have already determined was unjustifiable.

Doc. 6, Exhibit 27.

Again, Anaya has failed to establish that the decision of the state appellate court was

contrary to, or an unreasonable application of, *Strickland*.  Anaya argues that the presentation of

the DNA evidence was "messy" and that trial counsel should have investigated the DNA

evidence.  In this regard, he argues that blood found on the couch should have been tested.

Anaya contends that, if it was determined to be his blood, it would support his theory that his

wife attacked him.  The state appellate court determined that such evidence would only be

relevant to a claim of self-defense, which the court determined was unjustifiable.  It is well-

established that counsel is not deficient for failing to raise a meritless argument.  *See, e.g.,*

*Hoffner v. Bradshaw*, 622 F.3d 487, 509 (6th Cir. 2010).  For this reason, the state appellate

court's decision is not contrary to, or an unreasonable application, of *Strickland*.

In his Traverse, Anaya argues that, even if the self-defense claim was hopeless, his

counsel was still ineffective because the DNA evidence could have established that he was

provoked into attacking his wife, which is an element of voluntary manslaughter.  This

argument, which was not specifically presented to the state appellate court, is also unavailing.

*See* Doc. 6, Exhibit 25, pp. 18-19.  A review of the record show that, in fact, a sample of blood

that was on the couch was obtained (referred to as the swab from the sofa) and this blood was

tested for DNA.  Doc. 6, Tr. Vol. IV, pp. 802, 809.  The DNA test results confirmed that the

blood from the swab from the sofa was Anaya's blood.  Doc. 6, Tr. Vol. IV, p.  809.  A pillow

and a quilt that were found on the couch were also tested for blood, and the presence of blood

was confirmed on these items, but DNA testing was not performed on these items.[4]  Doc. 6, Tr.

Vol. IV, pp. 809-815.  The evidence regarding Anaya's blood being on the swab from the couch

was introduced into the record and presented to the jury.  Counsel then argued to the jury that he

was attacked, and that the attack provoked Anaya into killing his wife.  The jury rejected this

argument and found Anaya guilty of murder.  Even if additional DNA testing would have

revealed that Anaya's blood was also on the pillow and quilt, Anaya has failed to establish that

there is as reasonable chance that this additional evidence would have changed the outcome of

his trial.  Anaya's blood was already found on the couch, based on the DNA testing of the couch

swab.  Even if his blood was also confirmed to be on the pillow and quilt, it is unlikely that this

additional information would have changed the results of the trial in this case because the

defense had already established that Anaya's blood was on the couch and argued that Anaya's

wife attacked him first, thus provoking him to kill his wife.  The jury was not persuaded by this

argument.  It is unclear how the addition of blood on the pillow and quilt would have changed

this result.  Again, Anaya's arguments to the contrary are nothing more than speculation, which

cannot form the basis for federal habeas relief.  *See Wood*, 516 U.S. at 8.  Thus, even assuming

*arguendo* that the failure of counsel to test the blood constituted deficient performance, Anaya

---

[4] Anaya argues in his Traverse that his trial counsel were ineffective because they did not obtain DNA evidence from the "blood on the sofa."  Doc. 7, pp. 18-19.  As set forth above, DNA results were actually obtained from the swab of the sofa.  It is presumed that Anaya's arguments in his Traverse actually relate to DNA testing regarding the blood that was found on the couch pillow and quilt, and that his reference to "blood on the sofa" is generic.  As such, this argument shall be addressed as if Anaya is referring to the blood found on the couch pillow and quilt.

has failed to establish that he was prejudiced because the additional DNA test was unlikely to change the outcome of the case and the fifth sub-claim is without merit.

### vi.　Failure to Request Crim.R. 16(B)(1)(g) Discovery

Anaya asserts in his sixth sub-claim that his trial counsel were ineffective because they failed to engage in Crim.R. 16(B)(1)(g) discovery.  Anaya asserted this claim in his second direct appeal.  The state court of appeals rejected this claim, stating:

> {¶40} Finally, appellant argues that his defense counsel was ineffective because he failed to engage in Crim.R. 16(B)(1)(g) discovery for the purpose of cross-examining witnesses "who were known to have made prior statements" and any evidence possessed by the state. Appellant fails to identify any of the witnesses who made prior statements or any evidence that the state should have, but did not, produce. Consequently, appellant cannot demonstrate that there was a reasonable probability that the outcome of his trial would have been different absent trial counsel's alleged error. *Strickland*, 466 U.S. at 688.

Doc. 6, Exhibit 27.

Anaya cannot establish that the state court of appeals' decision regarding Crim.R. 16(B)(1)(g) discovery[5] was contrary to, or an unreasonable application of, *Strickland.*  As correctly noted by the state appellate court, Anaya failed to identify any of the witnesses who made prior statements or any evidence that the state should have, but did not, produce.  Anaya also failed to identify any specific inconsistencies between testimony of witnesses at trial and their prior statements.  Further, Anaya failed to explain how he was prejudiced by the supposed deficiency in his counsels' representation, especially considering that his counsel cross-examined each of the State's witnesses.  As the state appellate court reasonably determined, Anaya has failed to demonstrate prejudice under the *Strickland* test.

---

[5] Rule 16(B)(1)(g) of the Ohio Rules of Criminal Procedure, which was revised in 2010, provided in pertinent part:
> "Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement."

Ohio R. Crim. P. 16(B)(1)(g) (2009).

In his Traverse, Anaya argues that prejudice should be presumed because he has no idea what the State would have produced had a request under Crim.R. 16(B)(1)(g) been made.  Anaya contends that only the State knows what information is contained in its "secret files."  Doc. 7, p. 20.  This argument certainly does not satisfy the standard set forth in *Strickland* and it is therefore unavailing.  Anaya's claim is nothing more than conjecture and provides no basis upon which the Court can evaluate his counsels' performance or address the question of resulting prejudice.  Anaya's speculation, with absolutely no evidentiary support, cannot form the basis of habeas relief.  Anaya has thus failed to establish that trial counsel were ineffective.  For the same reasons, Anaya has failed to demonstrate that the state appellate court's decision was contrary to, or an unreasonable application of, *Strickland*.  His sixth sub-claim therefore lacks merit.

### vii.   Allowing a Misleading Instruction to the Jury as to Voluntary Manslaughter

Finally, Anaya argues in his seventh sub-claim that his trial counsel were ineffective because they failed to object to the jury instruction on voluntary manslaughter.  A lengthy discussion of this argument is unnecessary.  The state court of appeals determined that: (1) the trial court provided the jury the correct legal information on voluntary manslaughter and murder, and (2) the trial court did not commit any error in its instructions to the jury on the meaning of purposely or knowingly.  Doc. 6, Exhibit 27, ¶¶ 42-45.  Because the underlying jury instruction on voluntary manslaughter was found to be proper, there can be no ineffective assistance in failing to argue a non-meritorious position.  *See, e.g., Alder v. Burt*, 240 F.Supp.2d 651, 670 (E.D. Mich. 2003) ("Failing to present meritless objections at trial or meritless claims on appeal is not ineffective assistance of counsel.") (citing *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir.1999)).  Accordingly, Anaya's seventh sub-claim is without merit and should be denied.

In sum, as the state court of appeals reasonably determined, Anaya cannot show that trial counsel performed deficiently, or that, but for counsels' alleged errors, there was a reasonable probability that the result of the proceeding would have been different.  Under the double layer of deference for ineffective assistance of counsel claims evaluated under Section 2254(d)(1), Anaya's claims are without merit and his first ground for relief should be denied with prejudice.

### b.    Ground Three – Right to Counsel of Anaya's Choice

In his third ground for relief, Anaya argues that he was denied his right, under both the Ohio Constitution[6] and the United States Constitution, to counsel of his choice when the trial court denied his motion to release certain items seized by police on the night of his arrest.  Doc. 1, p. 9.  Specifically, Anaya alleges that the State seized $1,775.10 and three gold rings and that, had the state released these assets, he would have been able to use these assets to retain the counsel of his choice.  Doc. 1, p. 9, and Doc. 7, pp. 37-39.  This claim lacks merit.

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense."  U.S. Const., Amend. VI. Generally, although subject to certain limitations, a defendant has the right to counsel of his choice.  *See Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932); *see also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) (noting that, although an indigent defendant is not entitled to have the attorney of his choice appointed, "the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds.").  However, the Court has

---

[6] To the extent that Anaya claims that his rights under the Ohio Constitution were violated, such a claim is not cognizable on federal habeas review.  A claimed violation of the Ohio Constitution is not cognizable on federal habeas review because it is not a claim that that Anaya is in custody in violation of the Constitution or laws or treaties of the United States.  *See* 28 U.S.C. § 2254.  As such, to the extent that Anaya asserts a state law claim in his third ground for relief, that claim should be dismissed.

noted that, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

In *Wheat,* the Supreme Court emphasized that the right to counsel of choice is "circumscribed in several important respects." *Id.* The Court then identified four situations in which the Sixth Amendment does not entitle a defendant to preferred counsel: A defendant does not have the right to be represented by (1) an attorney he cannot afford; (2) an attorney who is not willing to represent the defendant; (3) an attorney with a conflict of interest; or (4) an advocate (other than himself) who is not a member of the bar. *Id.*

In *Caplin & Drysdale*, the Supreme Court further delineated the scope of a defendant's right to counsel of choice.  In that case, the Supreme Court considered whether the federal drug forfeiture statute, 21 U.S.C. § 853(c), violated the Sixth Amendment by permitting the forfeiture of assets that a defendant intended to use to hire his preferred legal counsel.  491 U.S. at 625. The Court concluded the forfeiture statute was not at odds with the Sixth Amendment, stating that "[t]he [Sixth] Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Id.* at 624.  The Supreme Court elaborated further:

> Whatever the full extent of the Sixth Amendment's protection of one's right to retain counsel of his choosing, that protection does not go beyond "the individual's right to spend his own money to obtain the advice and assistance of ... counsel." A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice.

*Caplin & Drysdale,* 491 U.S. at 626 (citations omitted).

The issue in this case is whether the state appellate court's decision either contradicted or unreasonably applied the principles set forth above.  In *Anaya II,* the state appellate court rejected Anaya's claim of error regarding the right to retain counsel of his choice, stating:

> {¶46} In Assignment of Error No. VI, Anaya contends that the trial court violated his right to due process by freezing his assets, thereby depriving him of his right to engage counsel of his choice as protected under the United States and Ohio Constitutions. According to appellant the amount "frozen" was $1,775.10 and three gold rings. He asks this court to order the common pleas court to give Anaya these items so that he may hire an attorney, and, apparently due to the alleged constitutional violations, to order a new trial.

> {¶47} Appellant filed a motion for the release of evidence on January 12, 2006. In this motion, Anaya listed ten items, including cash found "in pants pockets" and three gold rings. The trial court denied this motion on January 26, 2006. Appellant's January 12, 2006 motion fails to identify any of the items listed in the motion as the property of appellant. Therefore, we cannot say that the trial court erred in denying this motion, and appellant's Assignment of Error No. VI is found not well-taken.

Doc. 6, Exhibit 27.

Anaya has failed to establish that the state court of appeals' decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.  First, Anaya does not argue that indigent defendants have a Sixth Amendment right to counsel of their choice.  Under *Caplin & Drysdale*, it is clear that they do not.  Second, the state court of appeals concluded that Anaya failed to establish ownership of the assets that were seized by the State.  As set forth above, the Supreme Court has determined that a defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice. *Caplin & Drysdale*, 491 U.S. at 626.  It is axiomatic that, if Anaya did not own the assets that were seized, then he did not have the right to used said assets to retain the counsel of his choice.

Because Anaya failed to establish ownership of the assets in question, he could not establish a violation under the Sixth Amendment.[7]  Anaya also has failed to establish that he actually could have retained counsel of his choice if the assets in question had been released to him.  Indeed, he has not identified any attorney he would have chosen to represent him, nor has he substantiated that an attorney of his choice would have agreed to represent him in exchange for the value of the assets in question.  Finally, as set forth above, Anaya has failed to establish that he was denied the effective assistance of counsel.  For these reasons, the state court of appeals' decision is neither contrary to, nor an objectively unreasonable application of, clearly established Supreme Court precedent. Anaya's third ground for relief is therefore without merit and should be denied.

## IV.  Conclusion and Recommendation

For all of the reasons stated above, the undersigned Magistrate Judge concludes that Petitioner Danny Anaya is not entitled to relief on any of the three grounds for relief in his petition for writ of habeas corpus.  Accordingly, the Court should DENY Anaya's petition for writ of habeas corpus and DISMISS this action with prejudice.


Dated: February 5, 2013

_____
Kathleen B. Burke
United States Magistrate Judge

---

[7] Further, in his Traverse, Anaya appears to challenge the accuracy of the seizure of his property by the State.  Doc. 7, pp. 37-38.  Such a claim is not cognizable on federal habeas review.  *See, e.g., Tharpe v. Quarterman*, No. 4:07cv494, 2007 WL 2491855, at *1 (N.D. Tex. Sept. 5, 2007) (citing *Ozoroski v. Klem*, No. 04–561, 2004 WL 1446046, at *16 n. 16 (10th Cir. Jan. 24, 1997) (observing "the accuracy of the [state] forfeiture proceedings falls beyond this Court's province on habeas corpus review");  *Bowen v. United States*, No. 7:05cv37, 2005 WL 1676668, at *2 (M.D. Ga. June 29, 2005) ("A writ of habeas corpus under 28 U.S.C. § 2254 is available for persons in custody pursuant to the judgment of a State court. Although petitioner argues that the imprisonment of his property violates his constitutional rights § 2254 cannot be used to challenge the forfeiture of the funds seized."); *Dawkins v. United States*, 883 F. Supp. 83, 85 (E.D. Va. 1995) ("Nowhere does [28 U.S.C. § 2255] authorize collateral attacks on civil administrative forfeitures in an effort to secure the release of forfeited property or its cash equivalent.")); *Van Lang v. St. Lawrence*, No. CV406–119, 2006 WL 1653630, at *1 (S.D. Ga. June 7, 2006) ("Because state civil forfeiture proceedings may not be challenged using habeas corpus pursuant to § 2254, this case should be DISMISSED without prejudice.").

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).